## 5982. LAMB *v.* GORMAN.

1. The action of the court in directing a verdict, where no other verdict than that directed could have been legally rendered under the evidence submitted, is not such an error of law as will afford ground for reversal. A court of review will not concern itself with harmless error.

2. While acts which are equivalent to, or which may reasonably be construed to be equivalent to, an agreement on the part of a tenant to abandon, and on the part of the landlord to resume, possession of the premises may amount to a surrender by operation of law, still, to constitute a surrender by operation of law, there must not only be a surrender by the tenant, but also an acceptance thereof by the landlord as a surrender. "A mere giving of the keys to the landlord does not of itself show a surrender." 24 Cyc. 1373 (c).

3. In the present case the defendant undertook to show the landlord's acceptance of his surrender of premises leased to him under a written contract; but, conceding the defendant's evidence upon this point to be true, a verdict for the plaintiff was demanded. There was no evidence that the landlord, in accepting the keys, accepted them as a surrender of the premises, or that the defendant was expressly or impliedly released as a tenant at the time the keys were delivered or thereafter. The letters written by the plaintiff's agent to the defendant showed nothing more than a willingness to release the defendant from the contract upon conditions which were not accepted by the defendant.

4. There was no error in overruling the motion for a new trial.

DECIDED AUGUST 4, 1915.

Complaint; from city court of Atlanta—Judge Calhoun. August 8, 1914.

*Hewlett, Dennis & Whitman,* for plaintiff in error.
*C. D. Maddox,* contra.

RUSSELL, C. J. The propositions of law announced in the head-

notes decide the points raised in the record, and perhaps do not require elaboration to be understood. A brief statement of the facts as disclosed by the record, however, may make clearer our exact meaning. Mrs. Gorman, under a written contract, leased to Lamb a storehouse in the city of Atlanta for a term of two years, commencing on October 1, 1912, with the rent payable monthly in advance. The first month's rent of $20 was paid by Lamb. About the first of November Lamb sent the keys of the storehouse by one Williams to O. D. Gorman, the husband and agent of the plaintiff. The keys were sent without any previous notice of an intention to do so, and without any agreement with the opposite party to the contract. Williams was not introduced as a witness, and, so far as the record discloses, neither the plaintiff nor her agent had any conversation with Lamb about the keys, nor was there any statement by the plaintiff or her agent that the keys were accepted for any purpose whatever, or that Lamb would be released as the lessee. The suit was for the rental from October 1, 1912, to May 9, 1913, amounting to $146, and, upon proof that the first month's rent had been paid, the trial judge directed a verdict for $126. The defendant sought to charge the plaintiff with the value of a counter left in the store at the time that he abandoned it, but there was no evidence that the plaintiff had converted the counter to her own use or had refused any demand for its delivery. As to the counter the defendant himself testified only that he left the counter, worth about $15, when he moved out of the premises. It is to be borne in mind that the contract of rental was in writing and embraced a period of two years, and, though the plaintiff's agent testified that he secured another tenant May 9, 1913, the contract expressly provided that the lessor, at her option, upon a breach of the contract, might sublet the premises as agent of the lessee, to minimize the damage resulting from the breach of the contract, and that such subletting should not be deemed in any sense a breach of the contract on the part of the lessor. Under the contract, then, the landlord had the right to sublet the premises, whether there was a surrender of the premises which was accepted by the landlord, or whether the tenant had breached the contract by abandoning the lease without any agreement whatsoever with the landlord. The only question in the case therefore is whether there was such a total failure of evidence on behalf of the defendant (who set up the de-

fense that the premises had been surrendered to the agent of the landlord and that he had thereby been released from the contract) as demanded a finding in favor of the plaintiff. In other words, did the testimony for the defendant warrant any inference upon which a jury could have found that the defendant or her husband (who was her agent) had released the defendant from the contract. If any such inference could be drawn from the testimony, there would be such conflict in the evidence as could only be settled by the finding of a jury. If the deduction that the landlord agreed to the defendant's abandonment of the premises and consented to retake possession thereof could not legally have been drawn by a jury, then the action of the court in speeding the trial by directing a verdict was harmless to the defendant.

According to the defendant's testimony, he moved out of the premises without any notice whatever to the landlord or her agent, and before he sent the keys by Williams. It is true he left in the store a counter worth $15, for which he has never since made any demand, but he does not testify that he sent any message by Williams, or is there any testimony that he requested through Williams that the plaintiff should release him from the contract of rental. There was nothing that the plaintiff's agent could do but accept the keys; for it was plain, from the fact that the defendant was sending the keys, that the storehouse had already been vacated. However, in the defendant's testimony there is nothing that indicated on the part of the plaintiff's agent a willingness that the storehouse should be vacated and the contract terminated. On the contrary, the defendant testified: "A day or two thereafter I received a letter from Mr. Gorman, requesting me to call by his office to see him, and stating that he thought we could make some arrangement by which I could continue to conduct my dairy business on the premises." So far from indicating any definite agreement on the part of the plaintiff to accept the keys as an evidence of surrender of possession, this letter merely indicated uncertainty on the part of the plaintiff as to what to do under the existing conditions, and perhaps a willingness to modify some term of the contract if, after a conference, an agreement could be reached as to the modification. The defendant further testified: "I think I also received another letter shortly thereafter, making substantially the same request." According to the defendant's testimony, the

plaintiff was so anxious not to resume possession of the premises and not to accept the tenant's surrender of possession that the plaintiff's agent later told the defendant that if the defendant would go back and open up business he would help the defendant in every way he could, and was willing to allow him as much as twelve months' free rent, if necessary. When a landlord rents a building and puts a tenant in possession of the premises (with consequent liability for rent) the possession of the premises can not be surrendered by the tenant during the term of the lease, unless the surrender be accompanied by an agreement on the part of the landlord to retake possession. Otherwise any tenant, by moving out between dark and daylight, might surreptitiously avoid a rent contract upon the ground that he had surrendered possession. A landlord may retake possession either for himself or for the purpose of renting to another tenant, upon the surrender of possession by a tenant, but, to complete the evidence of surrender, there must be evidence of something more than an inability on the part of the landlord to compel the tenant to remain in possession. There must be either an express agreement to the surrender of possession on the part of the tenant, or such circumstances as compel the conclusion that the landlord consented to retake possession of his property. Under the defendant's own evidence, the plaintiff's agent was so unwilling to accept the defendant's surrender of possession that he tentatively suggested a modification of the terms of the contract for the first year; but the defendant can not take advantage of this suggestion, because it did not purport to affect the contract as a whole or deprive the plaintiff of the increased rental of $25 for the second year, which the contract provided for. The tentative proposals testified to by the defendant did not look to the cancellation or avoidance of the contract, which was for two years; and furthermore, since the defendant did not accept the proposal or act thereon, the contract, so far from being abrogated, was not even modified. See *Schachter* v. *Tuggle Co.,* 8 *Ga. App.* 561 (70 S. E. 93).

There being no evidence that the plaintiff at any time consented to the defendant's abandonment of the premises, the action of the court in directing a verdict affords the plaintiff in error no ground for complaint. *Judgment affirmed.*